UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| THOMAS CRESS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 5:04-cv-159 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| CARMEN PALMER, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is represented by the University of Michigan Clinical Law Program. Promptly after the filing of a petition for habeas corpus, the court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, I find that the petition is barred by the one-year statute of limitations. Alternatively, I find that none of petitioner's grounds state a claim for habeas corpus relief.

**Discussion**

  I.  Factual Background

  Petitioner is currently incarcerated in the Riverside Correctional Facility. On April 24, 1985, petitioner was convicted in the Calhoun County Circuit Court of the first-degree felony murder of Patricia Rosansky. Seventeen-year-old Rosansky disappeared on February 3, 1983. Her partially-clothed body was found two months later in a wooded area outside of Battle Creek in a ravine and covered by a refrigerator door. The physical evidence showed that she had been sexually assaulted. She had defensive wounds on her hands, extensive bruising on her legs, and two pieces of tree limbs were found in her throat. She died from a brain injury that resulted from one or more blows to the head with a blunt object. Hair and semen samples recovered from the victim's body failed to connect petitioner to the murder. The case against petitioner consisted primarily of testimony of several witnesses to whom petitioner had admitted murdering the victim. Petitioner took the stand and denied that he killed the victim or that he had told anyone that he had committed the murder. He claimed that he was delivering papers on February 3, 1983, and presented an alibi witness in support of his defense. The Michigan Court of Appeals affirmed petitioner's conviction on February 4, 1988, and the Michigan Supreme Court denied his application for leave to appeal on July 25, 1988. On May 14, 1992, the prosecutor ordered the destruction of all physical evidence obtained during the investigation of the Rosansky murder.

  On March 31, 1997, almost a decade after his direct appeal concluded, petitioner filed a motion for new trial pursuant to M.C.R. 6.500 et seq., raising the following claims:

  I.  MR. THOMAS CRESS WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL LOST A KEY PIECE

>  OF EXCULPATORY PHYSICAL EVIDENCE THEREBY DENYING CRESS HIS SIXTH AMENDMENT AND DUE PROCESS RIGHTS.
>
> II. SEVERAL KEY PROSECUTION WITNESSES AT TRIAL HAVE SINCE RECANTED THEIR TESTIMONY.
> III. MICHAEL RONNING HAD RECENTLY ADMITTED TO THE MURDER FOR WHICH THOMAS CRESS WAS CONVICTED OF.

Petitioner claims that in the course of investigating the 1982 murder of Maggie Hume, Battle Creek Homicide Detective Dennis Mullen began to suspect that Michael Ronning, a convicted murderer serving a life sentence in Arkansas, was responsible for the deaths of both Hume and Rosansky. According to petitioner, Mullen notified the Calhoun County Prosecutor's Office of his suspicion in the late 1980s. Ronning was reluctant to cooperate, but eventually agreed to confess to multiple murders in Michigan in exchange for a transfer to a Michigan prison so he could be closer to his family. On October 31, 1997, Ronning signed an affidavit admitting that he murdered Rosansky and two other women in Calhoun County in 1982 and 1983. Ronning passed a polygraph test in which he confessed to the three Calhoun County murders. Similarly, petitioner passed a polygraph test in which he denied murdering Rosansky.

On December 13, 1997, following a hearing on petitioner's motion, the trial court granted petitioner's motion and granted him a new trial. The prosecution moved for reconsideration of the trial court's order and to present additional evidence. In light of the new evidence presented by the prosecutor, the court concluded that Ronning's confession was not credible. Accordingly, on March 4, 1999, the trial court reversed its order granting petitioner a new trial.

Petitioner applied for leave to appeal to the Michigan Court of Appeals, raising the following claims:

> I. THE TRIAL COURT ERRED IN REFUSING TO CONSIDER THE UNDISPUTED FACT THAT THE PROSECUTOR DELIBERATELY DESTROYED THE EVIDENCE SHORTLY AFTER LEARNING ABOUT MR. RONNING, IN VIOLATION OF *ARIZONA v. YOUNG BLOOD*.
>
> II. THE TRIAL COURT ERRED, IN DIRECT VIOLATION OF BINDING PRECEDENT FROM THE APPELLATE COURT AND MICHIGAN SUPREME COURT, IN REFUSING TO CONSIDER THE EXCULPATORY POLYGRAPH EVIDENCE.
>
> III. THE TRIAL COURT ERRED ON RECONSIDERATION IN FAILING TO CONSIDER THE EVIDENCE THAT THE WITNESSES WHO HAD IMPLICATED MR. CRESS IN 1985 PERJURED THEMSELVES.
>
> IV. THE CIRCUIT COURT ERRED BY GROSSLY MISCHARACTERIZING THE STATE OF PATHOLOGICAL EVIDENCE.
>
> V. THE CIRCUIT COURT ULTIMATELY ERRED IN CONCLUDING THAT A DIFFERENT RESULT WOULD NOT BE LIKELY ON RETRIAL.

In an opinion issued on February 26, 2002, the Michigan Court of Appeals reversed the decision of the trial court and remanded the case for a new trial. The prosecutor applied for leave to appeal in the Michigan Supreme Court. The supreme court granted leave on the issue of whether petitioner was entitled to a new trial on the basis of newly discovered evidence in the form of a confession of another to the crime for which petitioner was convicted. The supreme court remanded to the trial court for an evidentiary hearing on the question of whether material and exculpatory evidence was destroyed in bad faith by the prosecutor. *See People v. Cress*, 646 N.W.2d 469 (2002). At the conclusion of the hearing, the trial court concluded that John Sali, the prosecutor responsible for the destruction of the evidence in 1992, had no personal knowledge of petitioner's potential innocence and had not engaged in any bad-faith destruction of evidence.

On July 9, 2003, the Michigan Supreme Court issued an opinion reversing the court of appeals and reinstating petitioner's conviction. *See People v. Cress*, 664 N.W.2d 174 (Mich.

2003). The supreme court found that the trial court did not abuse its discretion when it concluded that the third-party confessor was not credible and that the confession, therefore, did not make a different result probable on retrial. *Id.* at 182-83. The court found that Ronning's confession sharply deviated from the established facts regarding the crime. *Id.* at 182. In addition, it was undisputed that Ronning had an incentive to confess, and several witnesses testified that he admitted to fabricating the confession. *Id.* at 183. The supreme court also cited Ronning's refusal to testify regarding any details of Rosansky's murder at the evidentiary hearing, thereby casting doubt on whether he would testify at a new trial. *Id.* The supreme court further held that the trial court did not abuse its discretion in refusing to consider Ronning's polygraph results. While Ronning was questioned concerning a number of murders committed in Michigan, none of the polygraph questions specifically mentioned Patty Rosansky. *Id.* In a footnote, the supreme court indicated that the issue of bad-faith destruction of evidence was decided by the trial court on remand and was no longer before the supreme court. *Id.* at 181 n.4. The supreme court subsequently denied petitioner's motion for rehearing on September 30, 2003. *See People v. Cress*, 670 N.W.2d 223 (2003).

        Petitioner now raises the following grounds for habeas corpus relief:

I.    THOMAS CRESS WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW BECAUSE THE STATE COURT INCORRECTLY APPLIED CLEARLY-ESTABLISHED FEDERAL LAW AND MADE UNREASONABLE DETERMINATIONS OF FACT WHEN ANALYZING THE PROSECUTION'S DESTRUCTION OF EXCULPATORY PHYSICAL EVIDENCE.

II.    THOMAS CRESS WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW WHEN THE STATE COURT IGNORED CREDIBLE RECANTATION EVIDENCE.

III.    WHERE NEW EVIDENCE IMPLICATING ANOTHER IN THE CRIME FOR WHICH THOMAS CRESS HAS BEEN CONVICTED MAKES A

TRULY PERSUASIVE DEMONSTRATION OF ACTUAL INNOCENCE, CONTINUED INCARCERATION CONSTITUTES A FEDERAL DUE PROCESS VIOLATION AND CRUEL AND UNUSUAL PUNISHMENT.

II.     Statute of Limitations

Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 ("AEDPA"). The one-year statute of limitations provided in § 2244(d)(1) is new, as there previously was no defined period of limitation for habeas actions.[1]  Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest ofS
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

---

[1] Previously, the only time limit was provided in Rule 9 of the Rules Governing § 2254 Cases, which allows dismissal of a petition only under circumstances where the state has been prejudiced by the delay in filing.

A. Finality Under § 2244(d)(1)(A)

In this case, § 2244(d)(1)(A) provides the period of limitation. Under that provision, the one-year limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." According to the petition, petitioner appealed his conviction to the Michigan Court of Appeals and Michigan Supreme Court. The Michigan Supreme Court denied his application on July 25, 1988. Petitioner did not petition for certiorari to the United States Supreme Court, though the ninety-day period in which he could have sought review in the United States Supreme Court is counted under § 2244(d)(1)(A). *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on October 24, 1988. A petitioner whose conviction became final prior to the effective date of the AEDPA, April 24, 1996, has one year from the effective date in which to file his petition. *See Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004); *Payton v. Brigano*, 256 F.3d 405, 407 (6th Cir. 2001); *Searcy v. Carter*, 246 F.3d 515, 517 (6th Cir. 2001). Accordingly, petitioner had until April 24, 1997 in which to file his habeas petition.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed"). Petitioner filed his motion for relief from judgment on March 31, 1997, twenty-four days before the statute of limitations was to expire. A motion for post-conviction relief is considered "pending" during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court on collateral review. *See Carey v. Saffold*, 536 U.S. 214, 219-

20 (2002). It also is considered pending during the period in which the petitioner could have filed a petition for writ of certiorari in the United States Supreme Court, whether or not such a petition actually was filed. *See Abela v. Martin*, 348 F.3d 164, 171-73 (6th Cir. 2003) (*en banc*), *cert. denied sub nom.*, *Caruso v. Abela*, 124 S. Ct. 2388 (2004). The Michigan Supreme Court denied his motion for rehearing on September 30, 2003. Petitioner had ninety days in which to file a petition for certiorari in the United States Supreme Court. Accordingly, the statute of limitations remained tolled until December 29, 2003. Once the statute of limitations resumed on December 30, 2003, petitioner had twenty-four days, until January 23, 2004, in which to file his application for habeas corpus relief. Petitioner did not file the instant petition until September 23, 2004, eight months after the statute of limitations expired.

B. Discovery Under § 2244(d)(1)(D)

In apparent recognition that this habeas petition was filed more than one year after the conviction became final, petitioner seeks to invoke 28 U.S.C. § 2244(d)(1)(D). Under that provision, the statute of limitations runs anew from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[2] According to petitioner, Ronning did not confess to the murder until 1997, and he first learned that the prosecutor destroyed the physical evidence in 1998. Petitioner further argues that he had already filed his motion for relief from judgment when the factual basis for his claims arose in 1997 and

---

[2] "The question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care" *Townsend v. Lafler*, No. 02-2151, 2004 WL 1098757, at * 2 (6th Cir. May 14, 2004) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)); *see Schlueter v. Varner*, No. 03-3928, 2004 WL 2035180, at * 3 (3d Cir. Sept. 14, 2004). The petitioner has the burden of proving that he exercised due diligence in his search for the factual predicate of his claim and an application that "'merely alleges that the applicant did not actually know the facts underlying his . . . claim' is insufficient to show due diligence." *Stokes v. Leonard*, No. 00-3797, 2002 WL 531139, at * 2 (6th Cir. Apr. 4, 2002) (quoting *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997)).

1998. Because his motion for relief from judgment tolled the statute of limitations, petitioner asserts that the one-year statute of limitations did not begin to run until the proceedings on his motion for relief from judgment concluded on September 30, 2003. Under petitioner's theory, he had one year, until September 30, 2004, in which to file his habeas petition.

Petitioner, however, is not entitled to application of § 2244(d)(1)(D), because the claims "discovered" by petitioner are not cognizable on federal habeas corpus review.

Wilful Destruction of Evidence After Conviction and Appeal. Petitioner asserts that the prosecutor purposely destroyed evidence in 1992, once petitioner's possible innocence was suspected. The Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 ("AEDPA"), which governs this action, forecloses petitioner's argument. The AEDPA provides that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA limits the source of law to holdings of cases decided by the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Petitioner has failed to cite any clearly established Supreme Court authority to support the proposition that the prosecutor's destruction of evidence *after* the defendant's conviction became final violates the Due Process Clause. The cases cited by petitioner, *California v. Trombetta*, 467 U.S. 479 (1984) and *Arizona v. Youngblood*, 488

U.S. 51 (1988), both involved the pre-trial destruction of evidence, such that the evidence was not available for use in the criminal trial. In this case, the physical evidence was available to petitioner for purposes of presenting his defense at trial in 1985. The prosecutor ordered the evidence destroyed in 1992, four years after petitioner's direct appeal concluded and five years before he filed a motion for relief from judgment asserting his innocence. Consequently, *Trombetta* and *Youngblood* are irrelevant to this case. Simply put, the Supreme Court has never held (or even intimated) that destruction of evidence years after a criminal conviction violates the Due Process Clause. In the absence of such authority, AEDPA renders petitioner's novel claim unreviewable on habeas corpus review.

<u>Due Process Violation Arising from Inadequate Post-Conviction Review</u>. Petitioner's second claim challenges the adequacy of post-conviction review afforded by the state courts in adjudicating petitioner's motion under Mich. Ct. R. 6.500. Petitioner cites no Supreme Court authority allowing habeas corpus relief for errors in state post-conviction proceedings. In fact, the law is directly to the contrary. It is now well settled that the federal Constitution does not guarantee any right to collaterally attack a criminal conviction in the state courts. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide this [post-conviction] avenue of relief."); *United States v. MacCollom*, 426 U.S. 317, 323 (1976) (plurality opinion) ("Due Process Clause of the Fifth Amendment does not establish any right . . . to collaterally attack a final judgment of conviction.") (citations and footnotes omitted); *accord Murray v. Giarratano*, 492 U.S. 1, 10-11 (1989) (plurality opinion) ("State collateral proceedings are not constitutionally required . . . ."); *Davis v. Burt*, No. 02-2333, 2004 WL 771224, at * 9 (6th Cir. Apr. 9, 2004) (habeas corpus relief

cannot be granted based upon alleged errors or deficiencies in state post-conviction proceedings); *Alley v. Bell*, 307 F.3d 380, 386-87 (6th Cir. 2002); *Hassine v. Zimmerman*, 160 F.3d 941, 954-55 (3d Cir. 1998); *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997); *Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir. 1994). Thus, the Michigan courts had no obligation to even afford petitioner collateral review of his conviction after appeal. *A fortiorari*, petitioner cannot assert constitutional error arising from the circuit court's denial of his post-conviction motions or the refusal of Michigan's appellate courts to grant petitioner relief on appeal.

Errors in post-conviction proceedings are not a proper basis for habeas corpus relief, because such challenges do not go to the legality of the petitioner's confinement. *Kirby v. Dutton*, 794 F.2d 245, 245-46 (6th Cir. 1986); *accord Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2000). A finding by a federal habeas court that petitioner was wrongly denied post-conviction relief would avail petitioner nothing, because it would not entitle him to release. *Kirby*, 794 F.2d at 246. Under *Kirby*, petitioner's second ground fails to state any basis for federal habeas corpus relief.

<u>Actual Innocence</u>. Petitioner's third claim attempts to assert his actual innocence of the murder charge for which he was convicted. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court explicitly held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." A claim of actual innocence can only serve to excuse a procedural default so that a petitioner may bring an independent constitutional claim challenging his conviction or sentence. *Id.* at 404; *see Schlup v. Delo*, 513 U.S.

-11-

298, 314-15 (1995). Consequently, while a claim of actual innocence is not itself a constitutional claim, it is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404. In this case, petitioner does not assert actual innocence as a means to excuse his default of an underlying federal claims. Rather, the newly discovered evidence showing petitioner's innocence constitutes the claim itself, rather than the factual predicate of an independent claim.

Petitioner cites the Ninth Circuit and other federal courts of appeals for the proposition that *Herrera* opened the door to the possibility that a truly persuasive claim of actual innocence could state an independent constitutional claim cognizable in federal habeas corpus proceedings. Under the AEDPA, however, this court is bound by the clear holding of *Herrera* that a claim of actual innocence is not itself a constitutional claim. In dictum, the Supreme Court suggested "that *in a capital case* a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Herrera*, 506 U.S. at 417 (emphasis added). When applying the AEDPA, this court may consider only the "clearly established" holdings, and not the dictum, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Smith v. Stegall*, No. 02-2441, ___ F.3d ___, 2004 WL 2185968, at * 3 (6th Cir. Sept. 30, 2004); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001); *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000). However, even if the Supreme Court had adopted the Eighth Amendment concept hypothesized in *Herrera*, it would not apply in this case. Petitioner was not convicted of capital murder or sentenced to death. Moreover, petitioner had an opportunity to present his claim of actual innocence in post-

conviction proceedings before the Michigan State Courts. Because claims of actual innocence based on newly discovered evidence do not state a ground for federal habeas relief absent an independent constitutional violation, petitioner fails to state a claim for habeas relief, and he had no "claim" to discover under § 2244(d)(1)(D).

None of petitioner's claims is cognizable for purposes of federal habeas review. His discovery of those claims could not have triggered the running of the statute of limitations under § 2244(d)(1)(D). Therefore, § 2244(d)(1)(A) is the applicable provision for purposes of determining when the statute of limitations began to run in this case. Applying that provision, I find that the statute of limitations ran on January 23, 2004. Accordingly, the petition is time-barred. Alternatively, even if one considers the petition timely, it fails to state a claim for habeas relief.

In "rare" instances, the one-year limitation period applicable to § 2254 is subject to equitable tolling. *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004); *see Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). A petitioner bears the burden of showing that he is entitled to equitable tolling. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004); *Jurado v. Burt,* 337 F.3d 638, 642 (6th Cir. 2003); *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). The Sixth Circuit has repeatedly cautioned that equitable tolling should be applied "sparingly" by this court. *See Jurado*, 337 F.3d at 642; *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.), *cert. denied*, 537 U.S. 1091 (2002); *Dunlap*, 250 F.3d at 1008-1009. The Court of Appeals has identified several factors generally considered in determining whether equitable tolling applies: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap*, 250 F.3d at 1008 (citing

*Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988)).  These factors "are not necessarily comprehensive or always relevant; ultimately every court must consider equitable tolling on a case-by-case basis." *King*, 378 F.3d at 553; *see Allen*, 366 F.3d at 401 ("The list of factors is not necessarily comprehensive, and not all factors are relevant in all cases.").  The Sixth Circuit has repeatedly emphasized that "'absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified.'" *Allen*, 366 F.3d at 401-02 (quoting *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003)).  Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case.  Moreover, because I find that petitioner's claims are not cognizable for purposes of federal habeas corpus review, petitioner could not benefit from equitable tolling of the statute of limitations.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied because it is barred by the one-year statute of limitations.  Alternatively, I recommend that the petition be dismissed for failure to allege any claim cognizable in federal habeas corpus.


Dated:  October 7, 2004                    /s/  Joseph G. Scoville
                                           United States Magistrate Judge

### NOTICE TO PARTIES
Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).